KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JOHN L. SCHWAB (State Bar No. 301386)
john.schwab@mto.com
MICA L. MOORE (State Bar No. 321473)
mica.moore@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Netflix, Inc.

**REDACTED VERSION
OF DOCUMENT
PROPOSED TO BE FILED
UNDER SEAL**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HOLLYWOOD INNOVATIONS GROUP LLC,<br><br>           Plaintiff,<br><br>    vs.<br><br>NETFLIX, INC., a Delaware Corporation, ZIP CINEMA CO. LTD., a South Korean Corporation, KAKAO ENTERTAINMENT CORP., a South Korean Corporation, PERSPECTIVE PICTURES CO. LTD, a South Korean Corporation, and Does 1-10, inclusive,<br><br>           Defendants. | Case No. 2:21-cv-9423<br><br>**DEFENDANT NETFLIX, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Judge:  Hon. André Birotte Jr.<br>Date:    March 4, 2022<br>Time:    10:00 a.m.<br>Ctrm:    7B<br><br>Filed Concurrently: [1] Declaration of John L. Schwab; [2] Declaration of Kyo-Hwa Chung; [3] [Proposed] Order; [4] Request for Judicial Notice; [5] Application for Leave to File Under Seal |

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION .................................................................................... 1

II.    BACKGROUND ..................................................................................... 3

    A.    The Korean Producers Acquire The Rights To Produce *#Saraitda* And Distribute It Throughout The World ............................... 3

    B.    Netflix Acquires The Rights To Translate And Distribute *#Saraitda* ......................................................................................... 5

    C.    Plaintiff Acquires The Rights To Produce An Original English-Language Motion Picture: *Alone* ............................................. 5

    D.    Plaintiff Demands Netflix "Cease And Desist The Dubbing" of *#Saraitda* ...................................................................................... 6

    E.    Plaintiff Sues Netflix, Zip, Perspective And Kakao Entertainment ....................................................................................... 6

III.   ARGUMENT .......................................................................................... 7

    A.    The Complaint Should Be Dismissed Because Plaintiff Does Not, and Cannot, Allege That It Owns The Exclusive Right To Translate *#Saraitda*. ................................................................... 7

        1.    Plaintiff Does Not And Cannot Allege Ownership of an Infringed Right ............................................................ 8

            (a)    Plaintiff Does Not Allege Ownership Of The Right To Translate #Saraitda .................................... 8

            (b)    Plaintiff Cannot Plead Ownership Of The Right To Translate #Saraitda Because, Under Korean Law, Naylor Conveyed That Right To Zip/Perspective ........... 8

            (c)    Plaintiff Cannot Plead That Naylor Reserved The Right to Translate #Saraitda ................................. 10

        2.    Plaintiff's Claim of Rights In The *Devour* Screenplay Does Not Give It Standing To Allege Infringement in the Translation of *#Saraitda* ........................................... 12

    B.    If The Case Is Not Dismissed Under Rule 12(b)(6), The Court Should Dismiss It Under The Doctrine of Forum Non Conveniens. ...................................................................................... 14

        1.    The Republic of Korea Is An Adequate Alternate Forum ......... 15

        2.    The Balance of Private and Public Interest Favors Dismissal ............................................................................ 16

# TABLE OF CONTENTS
### (Continued)

**Page**

      (a)    Private factors....................................................................16

      (b)    Public factors....................................................................17

C.    Dismissal Is Also Warranted Because Plaintiff Failed to Join Indispensable Parties..............................................................19

IV.    CONCLUSION ................................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL CASES**

*Brown v. Elec. Arts Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ............................................................... 7

*Cabell v. Zorro Prods. Inc.*,
   No. 5:15-cv-00771-EJD, 2017 WL 2335597 (N.D. Cal May 30,
   2017) ........................................................................................................ 16

*Carrico v. City & Cnty. of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ............................................................. 14

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) ............................................................. 16

*Contact Lumber Co. v. P.T. Moges Shipping Ltd.*,
   918 F.2d 1446 (9th Cir. 1990) ............................................................. 16

*Creative Tech. Ltd. v. Aztech Sys. Pte. Ltd.*,
   61 F.3d 696 (9th Cir. 1995) .................................................................. 16

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ............................................................. 19

*de Fontbrune v. Wofsy*,
   838 F.3d 992 (9th Cir. 2016) ................................................................. 9

*DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) ................................................................. 7

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ............................................................. 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................ 2

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .................................................................. 14, 16, 18

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................... 3

1
2

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

3
4

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .............................................. 14, 15, 16, 17

5
6

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015) ................................................................. 7

7
8

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .......................................................... 2, 14, 17, 18

9

*Pizzorno v. Draper*,
    No. 17-00182-AB, 2017 WL 4712071 (C.D. Cal. July 7, 2017) ...................... 14

10
11

*Shields v. Barrow*,
    58 U.S. 130 (1854) ............................................................................ 3

12
13

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) .......................................................................... 14

14
15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ............................................................ 15

16
17

*UMG Recordings Inc. v. Augusto*,
    628 F.3d 1175 (9th Cir. 2011) .............................................................. 7

18
19

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................... 3

20

*Wales Indus. Inc. v. Hasbro Bradley Inc.*,
    612 F. Supp. 510 (S.D.N.Y. 1985) ....................................................... 20

21
22

**FEDERAL STATUTES**

23

17 U.S.C. 501(b) ..................................................................................... 7

24

**STATE STATUTES**

25

U.C.C. Article II ................................................................................... 15

26

**FEDERAL RULES**

27

Fed. R. Civ. P. 12(b)(6) ....................................................................... 3, 14

28

1
2

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

3   Fed. R. Civ. P. 12(b)(7) .......................................................................... 2, 19

4   Fed. R. Civ. P. 19(a) ............................................................................... 19, 20

5   Fed. R. Civ. P. 19(b) ........................................................................... 2, 19, 21

6
7   Fed. R. Civ. P. 44.1................................................................................... 9

8   Fed. R. Civ. P. 45(b)(2)(C) ..................................................................... 17

9   **OTHER AUTHORITIES**

10   3 *Nimmer on Copyright* § 12.02 (2021) ............................................. 12, 13

11   3 *Nimmer on Copyright* § 12.03 (2021) ............................................. 19, 20

12   5 *Nimmer on Copyright* § 17.01 (2021) .................................................. 15

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      <u>INTRODUCTION</u>

Plaintiff claims the right to produce and distribute an original English-language motion picture based on a screenplay titled *Devour*.  Compl. ¶ 3.  And Plaintiff did just that.  After its film failed, Plaintiff sued Netflix for copyright infringement.  But the film Netflix released was *not* an original English-language motion picture based on *Devour*.  It was an original *Korean*-language movie based on the screenplay called *#Saraitda*, that is also available dubbed, i.e., translated into other languages.  Plaintiff does not allege it has any rights to control the translation of the Korean-language movie.  Plaintiff *cannot* make that allegation, because the contracts that the Complaint repeatedly references—but conspicuously fails to attach—make it clear that Plaintiff has no such rights.  By contrast, Netflix has the right to distribute the Korean-language film in "all languages."  Because Plaintiff does not have an exclusive right that it claims has been infringed, Plaintiff's copyright claim must be dismissed.

Plaintiff's claim turns on the rights conveyed in a contract that neither Netflix nor Plaintiff is a party to.  Defendants Zip Cinema and Perspective Pictures, movie production companies based in South Korea (jointly, the "Korean Producers"), obtained the rights to make *#Saraitda* from *Devour*'s author, Matt Naylor.  The agreement between Naylor and the Korean Producers (the "Naylor/Zip Agreement") is explicitly governed by Korean law, which provides that, unless the parties expressly stipulate otherwise, the right to "exploit [an author's] work by means of cinematization" includes the right "to exploit the *translation* of a cinematographic work in the same manner as the cinematographic work."  *See* Declaration of Kyo-Hwa (Liz) Chung In Support of Netflix, Inc.'s Motion to Dismiss ("Chung Decl.") Ex A at 1–2 (emphasis added).  The Naylor/Zip Agreement does not reverse that presumption.  And that requires that Plaintiff's Complaint be dismissed with prejudice.

1    There are two additional reasons for dismissal.  First, this is an appropriate

2    case for exercise of the doctrine of forum non conveniens.  That doctrine calls for

3    the Court to balance private interest factors "affecting the convenience of the

4    litigants," and public interest factors "affecting the convenience of the forum" to

5    determine whether dismissal is warranted.  *Piper Aircraft Co. v. Reyno*, 454 U.S.

6    235, 241 (1981).  Both sets of factors favor litigating this case, if at all, in Korea

7    rather than the United States.  Three out of the four Defendants are Korean entities

8    who have not appeared, have not been served, and may well not be subject to this

9    Court's jurisdiction.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

10   U.S. 915, 919 (2011) (no specific jurisdiction over foreign corporation unless

11   "activity or an occurrence that takes place in the forum State" underlies the

12   controversy in suit; no general jurisdiction unless "affiliations with the State are so

13   'continuous and systematic' as to render them essentially at home in the forum

14   State").

15        *All* of the Defendants, including Netflix, trace their rights in #*Saraitda* to the

16   Naylor/Zip Agreement, which is expressly subject to Korean law and which

17   provides for exclusive jurisdiction of disputes in Korean courts.  Key witnesses and

18   documents—all beyond this Court's subpoena power—are located in Korea.  And

19   Netflix will be severely prejudiced if it has to defend this case without access to that

20   evidence.  Plaintiff no doubt would prefer to litigate in the United States, but the

21   inconvenience to the legal process and all other parties is "out of all proportion to

22   plaintiff's convenience," making this an appropriate case for forum non conveniens.

23   *Piper Aircraft Co.*, 454 U.S. at 241.

24        Alternatively, the Complaint should be dismissed for failure to join necessary

25   and indispensable parties.  *See* Fed. R. Civ. P. 12(b)(7); 19(b).  Those absent parties

26   are the Korean Producers, whom Plaintiff has named but not served; and another

27   Korean entity, which licensed the rights to Netflix but is not named as a defendant

28   here.  Any final decision in this case would "affect[] [those absent parties']

interest[s]," i.e., their contractual rights; and would "leav[e] the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1854).

## II.   BACKGROUND

### A.   The Korean Producers Acquire The Rights To Produce #*Saraitda* And Distribute It Throughout The World

Matt Naylor is the author of the *Devour* screenplay.  Compl. ¶ 13.[1]  *Devour* is a zombie-apocalypse story that describes "a young man's struggle for survival and the resulting mayhem as he is forced to self-isolate in his urban apartment during the outbreak of a global viral pandemic."  *Id.*

In July 2018, Naylor and the Korean Producers entered into the "Naylor/Zip Agreement."  *Id*. ¶ 15; RJN Ex. B.  As Plaintiff alleges, the Agreement gave the Korean Producers the right "to produce … a 'single, feature-length motion picture in the Korean language … based on the [Devour] [s]cript,'" i.e., #*Saraitda*.  Compl. ¶ 15; RJN Ex. B § 1.  But the Naylor/Zip Agreement did much more than that.  A number of additional provisions fatally undermine Plaintiff's claim in this case.

First, the Naylor/Zip Agreement ██████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ RJN Ex. B § 1.

---

[1] The facts are taken from the Complaint's well-pleaded factual allegations and the documents of which the Court may and should take judicial notice.  As explained in Netflix's concurrently filed Request for Judicial Notice ("RJN"), the Complaint incorporates by reference several agreements that form the basis for each side's chain of title, in addition to Plaintiff's initial demand letter.  Because the Complaint references and relies on these documents, and their authenticity is not subject to dispute, this Court may review the documents in their entirety and "assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Second, while the Naylor/Zip Agreement reserved to Naylor █████████ ████████████████████████████████████████████ the Agreement further provided that ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████ *Id.* § 1(a).  In other words, ███████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████

Third, the parties agreed that Naylor ██████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████ *Id.*  This reservation of a right by Naylor did not concern *#Saraitda*. ██████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████ *E.g., id.* §§ 1, 3. ████████ █████████████████████████████████████████████████████ As discussed below, that is the right Naylor conveyed to Plaintiff's predecessor and that Plaintiff fully exercised when it created its original English-language motion picture based on *Devour*.

Fourth, the Naylor/Zip Agreement expressly provides that its terms will be ██████████████████████████████████████████████ *Id.* § 18. As discussed below, the controlling Korean law on the scope of Naylor's rights grant is a reason the Complaint fails as a matter of law.

Notably, Plaintiff did not attach to its Complaint the Naylor/Zip Agreement or any of the other agreements that the Complaint relies on and references.  Netflix has attached the various agreements to its RJN.

**B.    Netflix Acquires The Rights To Translate And Distribute *#Saraitda***

The Korean Producers licensed *#Saraitda* to a Korean distributor, Lotte Entertainment.  Lotte, in turn, licensed the film to Netflix, granting Netflix the rights to distribute *#Saraitda* throughout the ███████████████████████████████████████ Compl. ¶ 28; see also RJN Ex. F at 2.  Netflix then translated the film into other languages.  Compl. ¶ 32. The Korean-language movie, *#Saraitda*, called *#Alive* in English, was released on Netflix beginning in September 2020.  *Id.*

**C.    Plaintiff Acquires The Rights To Produce An Original English-Language Motion Picture: *Alone***

Plaintiff alleges that it also acquired rights based on Naylor's *Devour* screenplay, including the right to produce a new English-language film based on the script.  Plaintiff first alleges that Naylor and Rabih Aridi entered into an agreement as of April 1, 2019 ("Aridi Agreement").  Compl. ¶ 16.  The Aridi Agreement, which the Court may judicially notice, provided that Naylor granted Aridi ██████ ███████████████████████████████████████ ████████  RJN. Ex. C § 1 (emphasis added).  The Excluded Rights provision thus expressly limited the scope of rights Aridi acquired.  Under that provision, Naylor did not grant, and Aridi did not acquire, ██████████████████████████ ████████████████████████████████████████ █████████████████  *Id.* § 2(a).

The Complaint alleges that the Aridi Agreement was followed by two assignments.  First, Aridi assigned to Devour LLC "all of [his] right, title, and interest in and to the [Aridi] Agreement."  Compl. ¶ 17.  Devour LLC, in turn, granted to Plaintiff "'all right, title, and interest in and to' an English language movie based on the Script[.]"  *Id.* ¶ 18. ███████████████████ ███████████████████████████ ████████████████████  *See* RJN Ex. D at 3; Ex. E at 2.

Plaintiff then produced its own English language film, *Alone*, based on the *Devour* screenplay.  *Id.* ¶ 20.  Plaintiff alleges *Alone* was a commercial failure.  Compl. ¶¶ 35–36.

### D.   Plaintiff Demands Netflix "Cease And Desist The Dubbing" of *#Saraitda*

On September 18, 2020, shortly after *#Alive* was released on the Netflix platform, Plaintiff sent Netflix a demand letter, Compl. ¶ 38, insisting that Netflix "permanently cease and desist the dubbing of [*#Saraitda*] in any language and the distribution of [*#Saraitda*] in any language other than Korean."  RJN Ex. A at 3.  Unlike its Complaint, Plaintiff's demand letter attached the various agreements, including the Naylor/Zip Agreement.  It is not surprising that Plaintiff would have the Naylor/Zip Agreement, given that Aridi, who is Plaintiff's CEO, negotiated with Naylor for rights that were expressly limited by the Naylor/Zip Agreement, and then subsequently assigned those rights to Plaintiff.

Like the Complaint, the demand letter claimed that Plaintiff's purported rights in the *Devour* screenplay prohibited Netflix from translating *#Saraitda* into English (as *#Alive*) or any other language.  Netflix kept *#Alive* on its platform.

### E.   Plaintiff Sues Netflix, Zip, Perspective And Kakao Entertainment

Plaintiff filed its Complaint on December 6, 2021.  Dkt. 1.  The Complaint purports to state a claim for copyright infringement against Netflix, the Korean Producers, and Kakao Entertainment Corp., a Korean company that Plaintiff alleges succeeded to Zip Cinema's interests.  Compl. ¶ 10.  The Complaint does not allege that Zip Cinema or Kakao have any presence in the United States, *id.* ¶¶ 9–10, and only alleges such a presence for Perspective on information and belief, *id.* ¶ 11.  Despite acknowledging that Netflix licensed its rights to *#Saraitda* from the well-known Korean conglomerate Lotte Entertainment, *see id.* ¶ 28, Plaintiff did not name Lotte as a Defendant.  *See* Dkt. 1.

-6-

1    To date, Netflix's understanding is that none of the Korean codefendants have

2    appeared, none have been served, and none have a presence in the United States

3    making them subject to service here.  Netflix met and conferred with Plaintiff's

4    counsel on January 26, 2022.  Declaration of John L. Schwab In Support of Netflix,

5    Inc.'s Motion to Dismiss ¶ 3.  In addition to discussing the instant Motion, Plaintiff

6    explained that it was attempting to serve the Korean codefendants in Korea via

7    Hague processes.  *Id.*  Netflix requested an extension of time so that Plaintiff could

8    attempt to effect service on the other named Defendants, and all potential motions

9    could be briefed and submitted to the Court at the same time.  *Id.*  Plaintiff declined.

10   *Id.* ¶ 5.

11   **III.   ARGUMENT**

12   **A.   The Complaint Should Be Dismissed Because Plaintiff Does Not,
         and Cannot, Allege That It Owns The Exclusive Right To
13       Translate #*Saraitda.***

14   To plead a copyright infringement claim, a plaintiff must plausibly allege that

15   it owns or controls an exclusive right under copyright, and that the defendant has

16   infringed that right.  *See, e.g.*, *UMG Recordings Inc. v. Augusto*, 628 F.3d 1175 (9th

17   Cir. 2011); 17 U.S.C. 501(b) (authorizing the "owner of an exclusive right under a

18   copyright … to institute an action for any infringement of that *particular* right[.]")

19   (emphasis added).  Ownership of an exclusive right is "a necessary predicate for

20   [statutory] standing to bring the claim" and therefore must be properly pled in a

21   complaint.  *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978,

22   986 (9th Cir. 2017); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795

23   F.3d 997, 1001 (9th Cir. 2015).  The court need not "accept any unreasonable

24   inferences or assume the truth of legal conclusions cast in the form of factual

25   allegations." *Brown v. Elec. Arts Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013).

26

27

28

1           1.   <u>Plaintiff Does Not And Cannot Allege Ownership of an</u>
2                <u>Infringed Right</u>

3          Plaintiff has failed to plead that it holds an exclusive right that Netflix has

4    infringed and, therefore, has failed to plead it has standing to pursue an infringement

5    claim.

6                  *(a)*    *Plaintiff Does Not Allege Ownership Of The Right To*
7                          *Translate #Saraitda*

8          Plaintiff alleges that Netflix (and other Defendants) infringed by translating

9    *#Saraitda* into "English" and "other non-Korean languages." *See, e.g.*, Compl. ¶ 4

10   (contending that Netflix "had no rights to distribute *Saraitda* dubbed into English or

11   any other non-Korean language"); *id.* ¶ 32 ("Netflix … created a high-quality

12   dubbed and subtitled version of [Saraitda] in English").  For Plaintiff to have

13   standing to complain about this conduct, Plaintiff must allege that it holds the

14   exclusive right to translate *#Saraitda*, and to distribute the translated film.  Plaintiff

15   does *not* plead exclusive ownership of that right.

16                 *(b)*    *Plaintiff Cannot Plead Ownership Of The Right To*
17                         *Translate #Saraitda Because, Under Korean Law, Naylor*
                      *Conveyed That Right To Zip/Perspective*

18         Plaintiff concedes that its own rights derive from the rights Aridi allegedly

19   acquired from Naylor.  But Aridi could only acquire rights that Naylor had to give

20   as of April 1, 2019, the date of the Aridi Agreement.  The Aridi Agreement

21   specifically *excluded* from the transfer to Aridi ███████████████████████

22   ████████████████████████████ RJN Ex. C § 2(a).

23   Plaintiff is well aware of that limitation:  Aridi is the CEO of Plaintiff, and ██████

24   ███████████████████████████████████

25   ████ *See* RJN Ex. E at 2.  Given that carveout, Naylor could not grant any rights

26   ████████████████████████████—which includes both the rights

27   Naylor conveyed to the Korean Producers ████████████████████████

28   ██████████████—when he granted Aridi the rights that Plaintiff now

-8-

purports to enforce.  Compl. ¶¶ 16–18; RJN Ex. C at §2(a).  In short, Plaintiff can *at most* plead that it controls all rights that are not set forth in the Naylor/Zip Agreement.

      That creates an insurmountable problem for Plaintiff, because Naylor granted the Korean Producers the right to translate *#Saraitda* as a matter of Korean law, which controls the Naylor/Zip Agreement.  As Plaintiff alleges, the Naylor/Zip Agreement gave the Korean Producers the right to produce a ████████████████ ████████████████████████████████████████ that picture.  Compl. ¶ 15; RJN Ex. B §1.  Naylor and the Korean Producers further consented ████████████████ ████████████████████████████████████████ ████████████████████████ RJN Ex. B § 18.  This Court may consider the content of Korean law on a motion to dismiss, including through declarations, and it is dispositive here.  *See* Fed. R. Civ. P. 44.1; *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016) ("courts do not transgress the broad boundaries established by Rule 44.1 when considering foreign legal materials— including expert testimony and declarations—at the pleading stage").

      Article 99 of the Korean Copyright Act provides that "[i]f the holder of author's economic right authorizes another person to exploit his/her work by means of cinematization, such authorization shall be presumed to include," among other rights, "the right to exploit the translation of a cinematographic work in the same manner as the cinematographic work," unless "otherwise expressly stipulated." Chung Decl. Ex. A at 1–2.  Thus, the default rule under Korean law is that the right to translate a motion picture from the Korean language into other languages is *presumed* to be transferred with the right to produce the motion picture, unless the parties expressly agree that those translation rights are *not* transferred.

1

2

               *(c)     Plaintiff Cannot Plead That Naylor Reserved The Right to Translate #Saraitda*

3

       In order to plead that it owns the exclusive right to translate *#Saraitda*,

4

Plaintiff must plead that Naylor *expressly* reserved those rights for himself under

5

Korean law and then later transferred them to Aridi.

       Plaintiff *cannot* make that allegation.  The Naylor/Zip Agreement contains no

6

stipulation reserving to Naylor the right to translate the Korean-language movie that

7

he authorized the Korean Producers to create.  The Agreement expressly reserves

8

for Naylor ████████████████████████████████████████████

9

████████████████████████████████ RJN Ex. B § 1(a).  Plainly, the

10

reservation of those rights does nothing to reverse the Korean-law presumption that

11

the Korean Producers acquired not only the right to create and distribute *#Saraitda*,

12

but to translate it into languages other than Korean.

13

       The Naylor/Zip Agreement also ████████████████████████████

14

████████████████████████████████████████████████████████

15

████████████████████████████████████████████████████████████

16

████████████████████████████████████████████

17

████████████████  To be sure, the Complaint appears to suggest that the translation of

18

*#Saraitda* is a "derivative right[]" of Naylor's copyright in *the screenplay*.  Compl.

19

¶ 15.  But *#Alive* is a translation of *the Korean-language movie*, *#Saraitda*, not of

20

the screenplay, *Devour*.  And Plaintiff does not, and cannot, allege that anything

21

about ████████████████████████████████ is an express stipulation to

22

reverse the Korean-law presumption regarding translation rights.  Indeed, the

23

Naylor/Zip Agreement's ████████████████████████████████████████

24

████████████████████████████████████  As noted, the Naylor/Zip

25

Agreement provides as examples ████████████████████████████████

26

████████████████████████ RJN Ex. B § 1(a).  All of those involve the

27

creation of *new* works, not the translation of the movie that the Korean Producers

28



1  acquired the right to create and distribute.  Thus, the ██████████ provision

2  does nothing to reverse the Korean-law presumption on translations.

3       The Naylor/Zip Agreement also provides that Naylor ███████████

4  ██████████████████████████████████████████████████████

5  ██████████████████████████  RJN Ex. B § 1(a).  This

6  provision, too, does nothing to reverse the Korean-law presumption about the rights

7  Naylor granted to the Korean Producers.  The provision says nothing about

8  *#Saraitda*, which the Agreement repeatedly refers to as the "Korean Picture."  *Id.*

9  §§ 1, 3, 4.  And the provision has nothing to do with translating that movie (or any

10 other), but instead speaks of the right ████████████████████

11 ██████████████████████████████████████████████████████

12 ██████   In short, nothing in the Naylor/Zip Agreement reverses the Korean-law

13 presumption about translation rights, much less does so expressly.

14       Not only is the Naylor/Zip Agreement lacking any express reversal of the

15 Korean law presumption.  The Agreement has numerous provisions that confirm the

16 Korean Producers acquired not only the right to produce and distribute *#Saraitda*

17 but to translate it.  For example, Naylor granted the Korean Producers the right to

18 exploit *#Saraitda* ██████████████████████████████████████

19 ████████████████████  RJN Ex. B § 1.  Those rights are entirely

20 consistent with the Korean Producers having the authority to translate *#Saraitda* into

21 other languages.  Indeed, the right would be meaningless without it, since an

22 untranslated Korean-language motion picture would have little, if any, commercial

23 appeal in countries with insubstantial numbers of Korean-speakers.

24       In addition, the Naylor/Zip Agreement requires the Korean Producers to

25 provide Naylor with ████████████████████████████████████

26 ██████████████████████████████████████████████

27 ██████████████████████████████████████████████

28 ████████████████████  RJN Ex. B § 6.  And the Naylor/Zip Agreement expressly

1   reserves to Naylor █████████████████████████████████████████

2   █████████████████████████████████████████ RJN Ex. B § 4(a).  If #*Saraitda*

3   could not be translated at all, there ████████████████████████████████████

4   █████████████████████████ Likewise, the Naylor/Zip Agreement █████████████

5   ████████████████████████████████████████████████████████████████

6   █████████████ an additional provision that makes little sense if the Producers

7   lacked translation rights to their work.  RJN Ex. B §13(a).

8       In sum, the Complaint and the Agreements it incorporates make it implausible

9   that Plaintiff has any right concerning the translation of #*Saraitda*.  Absent such a

10  right, Plaintiff's copyright infringement claim fails as a matter of law.

11      2.    <u>Plaintiff's Claim of Rights In The *Devour* Screenplay Does Not Give It Standing To Allege Infringement in the Translation of #*Saraitda*</u>

13      Because Plaintiff cannot plead that it owns a right purportedly infringed by

14  the translation of #*Saraitda*, the Complaint focuses on ownership of other rights.

15  Plaintiff's assertions fundamentally misunderstand copyright law.

16      First, Plaintiff contends that it holds the right to produce "an English-

17  language movie based on the [*Devour*] Script."  *See* Compl. ¶ 18.  Even assuming

18  that is true, it is black letter law that an exclusive owner of some, but not all, rights

19  to a work "may not sue for infringement of rights as to which he is not licensed,

20  even if the subject matter of the infringement is the work as to which he is a

21  licensee." 3 *Nimmer on Copyright* § 12.02 (2021).  Thus, "an exclusive licensee of

22  legitimate stage rights may not claim infringement by reason of unauthorized

23  production of a motion picture based on the same work, even though competition

24  from that motion picture might prove injurious to the licensee." *Id.*

25      That rule applies here.  Plaintiff admits, as it must, that the Naylor/Zip

26  Agreement gave the Korean Producers the right to produce #*Saraitda*, a Korean film

27  based on the *Devour* screenplay.  Compl. ¶ 15.  And Plaintiff does not allege that

28  #*Alive* involved the production of a new motion picture.  Plaintiff alleges only that

1   Defendants, purportedly using Netflix's "dubbing prowess," distributed a "dubbed

2   and subtitled version of [#*Saraitda*]."  *Id.* ¶ 32.  Plaintiff's allegations that the

3   translation of #*Saraitda* created "competition from that motion picture [that]

4   prove[d] injurious to the licensee" does not confer standing to bring a copyright

5   claim.  3 *Nimmer on Copyright* § 12.02 (2021).  To have standing, Plaintiff must

6   allege that it holds an interest in translating #*Saraitda* and distributing the translated

7   version.  Plaintiff cannot plausibly make that allegation because, as demonstrated

8   above, Naylor had already granted that right to the Korean Producers before

9   granting any rights to Aridi.

10          Second, Plaintiff makes the sweeping claim that it holds "all derivative

11  rights" to the *Devour* screenplay, and assumes, without explanation or further

12  allegation, that the right to translate #*Saraitda* must necessarily follow from those

13  rights.  Compl. ¶ 19.  Specifically, Plaintiff contends that the Naylor/Zip Agreement

14  "did not convey any derivative rights to the [Devour screenplay] to the Korean

15  Producers," and that any "new versions of *Saraitda* constituted unlawful derivative

16  works."  *Id.* ¶¶ 4, 15; *see also* RJN Ex. A at 3 ("[E]ach dubbed version of the Film

17  made and/or distributed by Netflix is a separate infringing act as a derivative work

18  explicitly reserved by Naylor.").

19          As explained, this allegation cannot be squared with the presumption under

20  Korean law that translation rights travel with production and distribution rights, and

21  the indisputable fact that the Naylor/Zip Agreement did not expressly reserve

22  translation rights to Naylor.  *Supra*, pp. 8–12.  Moreover, even if the right to

23  translate #*Saraitda* were a "derivative right[]" under Korean law, the Naylor/Zip

24  Agreement states that ███████████████████████  *Id.*  Plaintiff has not alleged

25  that the right to translate #*Saraitda* was (contrary to Korean law) included in those

26  frozen rights or that those rights were ever ███████ such that Naylor could have

27  transferred them to Aridi.

28                              * * *

1    Plaintiff has alleged an infringement of the right to translate *#Saraitda*, and so

2  Plaintiff must allege that it owns that right to make out a claim for copyright

3  infringement.  Because Plaintiff has not made that allegation, the Complaint must be

4  dismissed.  And since Plaintiff *cannot* plausibly make that allegation, the Complaint

5  should be dismissed without leave to amend.  *See, e.g.*, *Pizzorno v. Draper*, No. 17-

6  00182-AB, 2017 WL 4712071, at *9 (C.D. Cal. July 7, 2017) (noting that a court

7  "may deny leave to amend if the proposed amendment is futile or would be subject

8  to dismissal") (citing *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002,

9  1008 (9th Cir. 2011)).

10    **B.    If The Case Is Not Dismissed Under Rule 12(b)(6), The Court
                Should Dismiss It Under The Doctrine of Forum Non Conveniens.**

11

12    A district court may decline to exercise jurisdiction where litigation in a

13  foreign forum would be more convenient for the parties.  *Gulf Oil Corp. v. Gilbert*,

14  330 U.S. 501, 504 (1947).  A "primary purpose" of the doctrine is to "protect[ ] a

15  defendant from … substantial and unnecessary effort and expense" which may

16  otherwise result from trial in an inconvenient forum.  *Sinochem Int'l Co. Ltd. v.*

17  *Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 428 (2007); *Piper*, 454 U.S. at 248–

18  249 ("[T]he central focus of the *forum non conveniens* inquiry is convenience.")

19    In determining whether to dismiss an action based on forum non conveniens,

20  the court must consider (1) whether an adequate alternative forum exists; and (2)

21  whether the balance of private and public interest factors favor dismissal.  *Id*. at 254

22  n.22, 257; *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142–43 (9th Cir. 2001).

23  Here, the Korean courts provide an alternative forum available to all parties,

24  including Lotte and the Korean Producers, whom Plaintiff has not served, and who

25  apparently are not subject to service in this country.  And the balance of private and

26  public factors weighs decisively for dismissal.

27

28

1

<h2>1.    The Republic of Korea Is An Adequate Alternate Forum</h2>

2          At the outset, the Court must determine whether an adequate alternative

3 forum exists. An alternative forum is deemed adequate if: (1) the opposing party is

4 amenable to service of process there; and (2) the other jurisdiction offers a

5 satisfactory remedy. *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1180

6 (9th Cir. 2006).  The adequacy of the alternative forum turns on the availability of

7 the forum's remedies and not procedural differences associated with the forum.  A

8 foreign forum therefore "will be deemed adequate unless it offers no practical

9 remedy for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144.

10          Netflix submits that the courts of the Republic of Korea provide an adequate

11 alternative forum.  Zip Cinema, Perspective Pictures, and Kakao Entertainment

12 were all formed under the laws of the Republic of Korea, and are subject to service

13 of process there.  Netflix has a Korean presence (Chung Decl. ¶ 2) and, in any event,

14 would consent to the jurisdiction of the Korean courts in the event that the Court

15 dismisses this case.  With this stipulation, the Korean courts will have jurisdiction

16 over Plaintiff's claims against all Defendants.  The statute of limitations to seek

17 damages for copyright infringement in Korea is ten years, or three years from the

18 date that the Plaintiff learned of the infringement and the identity of the infringer.

19 *See* Chung Decl. ¶ 7.  Thus, Plaintiff has ample time to refile its complaint in Korea.

20 The Korean courts are capable of adjudicating copyright infringement disputes, and

21 the Korean copyright laws provide for remedies similar to those available in the

22 United States, including damages and injunctive relief.  *See* Chung Decl. ¶¶ 4, 6,

23 Exs. A–D.  Thus, the Korean courts provide an adequate alternative forum for

24 Plaintiff's claims.

25          It makes no difference that this case involves copyright interests that Plaintiff

26 contends arise under the laws of the United States, rather than under the laws of

27 Korea.  Korea is party to both the Universal Copyright Convention (U.C.C.) and the

28 Berne Convention for the Protection of Literary and Artistic Works (Berne), which

1  collectively mandate a policy of reciprocity in which the creators of copyrighted

2  works are afforded protection without regard to copyright's country of origin.  *See*

3  U.C.C. Art. II; Berne, Art V(1); 5 *Nimmer on Copyright* § 17.01 (2021).  For similar

4  reasons, the Ninth Circuit recognized that Singapore was an adequate forum for a

5  copyright dispute involving United States copyrights.  *See Creative Tech. Ltd. v.*

6  *Aztech Sys. Pte. Ltd.*, 61 F.3d 696, 700–01 (9th Cir. 1995); se*e also Cabell v. Zorro*

7  *Prods. Inc*., No. 5:15-cv-00771-EJD, 2017 WL 2335597, at *5 (N.D. Cal May 30,

8  2017) (finding Germany to be an adequate alternative forum for the resolution of a

9  dispute involving works subject to United States copyright laws).

10         2.       The Balance of Private and Public Interest Favors Dismissal.

11         The presence of an American plaintiff "is not in and of itself sufficient to bar

12  a district court from dismissing a case on the ground of *forum non conveniens*."

13  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).  And, while a plaintiff's

14  choice of forum is entitled to deference, that choice should not be given dispositive

15  effect, and dismissal is proper, where a balance of conveniences suggests that trial in

16  the chosen forum would be unnecessarily burdensome for the defendant or the court.

17  *Contact Lumber Co. v. P.T. Moges Shipping Ltd.*, 918 F.2d 1446, 1449 (9th Cir.

18  1990).  As applied here, the balance of private and public interest factors strongly

19  favor suit in Korea.

20              (a)     *Private factors.*

21         The private interest factors, which concern the "convenience [of] the

22  litigants," include "(1) the residence of the parties and the witnesses; (2) the forum's

23  convenience to the litigants; (3) access to physical evidence and other sources of

24  proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

25  bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other

26  practical problems that make trial of a case easy, expeditious[,] and inexpensive."

27  *Lueck,* 236 F.3d at 1145–46 (citing *Gulf Oil*, 330 U.S. at 508.)

28

The private interest factors collectively weigh in favor of Korea.  While Plaintiff is located in the United States, *see* Compl. ¶ 7, three out of four of the Defendants are Korean entities that Plaintiff is attempting to serve in Korea, presumably because those entities lack a U.S. presence.  *See* § II.E, *supra*.  Netflix is the sole United States defendant, but the Complaint's allegations suggest that Netflix has little independent evidentiary role in this case.  The Complaint alleges only that Netflix "acquired international distribution rights in the Korean language film" from Lotte Entertainment, another Korean company, and that Lotte, in turn, "acquired whatever rights the Korean Producers possessed." Compl. ¶ 28.  As discussed above, a central issue in this case will be determining the scope of the rights possessed by the Korean Producers, from which all of the Defendants' rights descend.  Netflix maintains that Korea's presumption that translation rights inhere in cinematization rights, and the absence of any express contrary stipulation in the Naylor/Zip Agreement, decide this question as a matter of law.

Should the Court determine, however, that this issue requires additional factual development, including inquiry into the intent of the contracting parties, Netflix notes that the majority of witnesses and records with insight into those negotiations are located in Korea.  This District lacks the power to compel the production or the appearance of such evidence and witnesses.  *See* Fed. R. Civ. P. 45(b)(2)(C).  And, absent such authority, Netflix will be significantly prejudiced in preparing its defense, as even willing witnesses will have to suffer unnecessary inconvenience and expense of international travel.  "[T]he central focus of the *forum non conveniens* inquiry is convenience," and here, convenience favors litigation in Korea.  *Piper Aircraft Co.*, 454 U.S. at 248–249.

> *(b)    Public factors.*

With respect to the public interest factors, a court should consider: "(1) the local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of

resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147.  The public interest factors similarly weigh strongly in favor of litigating this dispute in Korea.

As noted above, the Naylor/Zip Agreement is governed by Korean law, and both the Korean Producers and Naylor agreed to adjudicate disputes involving that agreement in the Korean courts.  Korea has an evident interest in interpreting contracts governed by its laws.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336–37 (9th Cir. 1984) (acknowledging that a state "has a significant interest in interpreting its own laws.").  The Korean courts' expertise in matters of Korean copyright law, as well as custom and practice relevant to the negotiation of Naylor's agreement with the Korean Producers, collectively weigh in favor dismissal.  By contrast, if the case remains in the Central District of California, the parties will be required to argue the proper application of Korean law and custom.  Neither the Court nor the jury should be burdened with resolving such foreign law disputes.  *See Gulf Oil*, 330 at 509 (acknowledging that dismissal is appropriate where it would permit a court to avoid having to "untangle problems in conflict of laws, and in law foreign to itself"); *Piper Aircraft*, 454 U.S. at 254 ("The doctrine of forum non conveniens … is designed in part to help courts avoid conducting complex exercises in comparative law.").

Finally, maintenance of this action in this district would impose significant costs on the Court and the local jury.  According to statistics compiled by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary, as of September 30, 2021, there were 10,769 civil cases pending in this judicial district.  *See* RJN Ex. G.  Given Korea's comparatively closer connections to this dispute, litigating the case in this district will only unnecessarily add to an already burdened docket.

Because both the private and public interest factors weigh in favor of litigation in Korea, dismissal is warranted under the doctrine of forum non conveniens.

### C.   Dismissal Is Also Warranted Because Plaintiff Failed to Join Indispensable Parties.

The Complaint is additionally subject to dismissal for failure to join necessary parties: specifically, the Korean Producers and Lotte Entertainment, an entity that Plaintiff alleges "acquired whatever rights the Korean Producers possessed" in *#Saraitda* and conferred those rights to Netflix.  Compl. ¶ 28.  Plaintiff has not named Lotte as a defendant.  And Plaintiff is currently attempting to serve the Korean Producers in Korea, which raises serious concerns both about whether such service will be successful and, if it is, whether those entities would be amenable to this Court's jurisdiction.

Rule 12(b)(7) directs dismissal if a pleading fails to join a "party under Rule 19."  Rule 19(a), in turn, provides a framework for determining whether an absent party is necessary.  A party is necessary, among other alternatives, if "that person claims an interest relating to the subject of the action," and deciding the case would "as a practical matter impair or impede the person's ability to protect the interest."  *See* Fed. R. Civ. P. 19(a)(1)(B).  If the Court determines that a party is necessary pursuant to Rule 19(a), then the plaintiff must join that party if feasible.  If joinder is not feasible, then the Court must consider whether the case may proceed in that party's absence, or whether the party is "indispensable," such that the equities require dismissal under Rule 19(b).

As applied here, this analysis suggests that several Korean entities are necessary to the litigation, but are absent.  The Complaint specifically alleges that four different Korean entities—Zip Cinema, Perspective Pictures, Kakao Entertainment and Lotte Entertainment hold or held the right to translate *#Saraitda.* And as noted previously, an adjudication of Plaintiff's claim that *Alive* infringes Plaintiff's rights would require a showing that Plaintiff, and not the Defendants, has the exclusive right to translate *#Saraitda.*  Such a ruling would necessarily invalidate the various agreements held by the Defendants, and nonparty Lotte.  *Cf.* 3

-19-

*Nimmer on Copyright* § 12.03 (2021) ("It would seem that joinder should occur if an issue is raised as to the validity of the copyright upon the rights of the persons to be joined, as well as those of the plaintiff, rest[.]"); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (reaffirming the "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract"). Further, Plaintiff seeks in this litigation to enjoin all distribution of the translation of *#Saraitda*, and to redirect all profits to Plaintiff—remedies that would necessarily affect the absent Korean entities. *See* Prayer for Relief ¶¶ 1, 3.

Deciding this case in these entities' absence would necessarily impede their ability to protect their interests. For the reasons already noted, a central issue in this case will be whether the Naylor/Zip Agreement between the Korean Producers and Matt Naylor (and agreement governed by Korean law) conferred the right to translate *#Saraitda*, which Plaintiff has placed squarely at issue in this case. Netflix was not a party to that agreement. There is no reason to think that Netflix's presence in this action will adequately defend the absent entities' interests. The sound principles of Rule 19(a) therefore preclude Plaintiff from prosecuting this infringement suit without attempting to join these parties. *See Wales Indus. Inc. v. Hasbro Bradley Inc.*, 612 F. Supp. 510, 517 (S.D.N.Y. 1985) (stating that where the validity of a copyright is challenged, all persons having an interest should be joined); 3 *Nimmer on Copyright* § 12.03 (2021) ("If a defendant in an infringement action raises as a defense a license from a third party, thereby raising as an issue the validity of the copyright held by such third party … such third party is an indispensable party in an action against the licensee.").

Where joinder is not feasible, a court must consider several factors in determining whether the party is "indispensable" and therefore the case cannot proceed in its absence. Joinder certainly *appears* to be infeasible with respect to the Korean Producers and Defendant Kakao. While Plaintiff may argue that it intends

to serve these entities, Plaintiff also refused to grant Netflix an extension of time to see whether Plaintiff can actually succeed in doing so.  Plaintiff should not be permitted to moot Netflix's joinder argument simply by forcing Netflix to proceed before Plaintiff can determine if the co-defendants are amenable to service in Korea.

To determine whether dismissal is warranted, courts must consider (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," (2) the extent to which "any prejudice could be lessened or avoided," through protective measures; (3) whether a judgment in the person's absence would be adequate, and (3) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).

On balance, these factors favor dismissal.  Netflix and the absent parties derive their copyright interests from the same source, and so judgment rendered against Netflix will necessarily invalidate the absent parties' rights.  Nor is it evident how this prejudice could be avoided through protective provisions in the judgment.  Finally, Plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.  For the reasons discussed in connection with Netflix's request for dismissal based on the doctrine of forum non conveniens, Plaintiff may file suit in the Republic of Korea, where all of the absent parties are located, and where Netflix consents to jurisdiction.  *See supra*, at p. 14.  Because Zip, Perspective, Kakao, and Lotte are indispensable parties, the case must be dismissed pursuant to Rule 19(b) if they cannot be joined to the litigation.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's complaint.

1    DATED:  February 2, 2022        MUNGER, TOLLES & OLSON LLP

2

3

4                             By:       */s/ Kelly M. Klaus*

5                                 KELLY M. KLAUS
                                 Attorneys for Netflix, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS