# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| HOLLYWOOD INNOVATIONS GROUP, LLC, | CV 21-09423 TJH (JCx) |
| Plaintiff, | |
| v. | Order |
| NETFLIX, INC., *et al.*, | |
| Defendants. | |

The Court has considered Defendants Perspective Pictures Co. Ltd.'s ["Perspective"] and Zip Cinema Co. Ltd.'s ["Zip"] [collectively, "the South Korean Producers"] motion to dismiss for lack of personal jurisdiction [dkt. # 78]; and Defendant Netflix, Inc.'s ["Netflix"] motion to dismiss for failure to join an indispensable party, *forum non conveniens*, and failure to state a claim [dkt. # 39]; together with the moving and opposing papers. The South Korean Producers joined Netflix's motion.

The following facts are alleged in the complaint.

On July 18, 2018, writer Matt Naylor entered into an agreement to license his movie script ["the Script"] to the South Korean Producers ["the Zip-Naylor

Agreement"]. The South Korean Producers are film production companies incorporated under the laws of South Korea. Allegedly, the Zip-Naylor Agreement conferred to the South Korean Producers the limited right to make a film in the Korean language from the Script, and reserved all other rights to Naylor.

Pursuant to the Zip-Naylor Agreement, the South Korean Producers made a Korean language film based on the Script, titled *#Saraitda*. In June, 2020, *#Saraitda* was released in South Korea and became a major box office success.

On April 1, 2019, while the South Korean Producers were making *#Saraitda*, Naylor entered into a separate agreement with Rabih Aridi whereby Aridi purchased the Script ["the Aridi-Naylor Agreement"], with a carve out for the rights that had been licensed to the Korean Producers. Thereafter, Aridi assigned his rights in the Script to Devour LLC. Ultimately, Devour LLC assigned the right to make an English language film based on the Script, along with derivative rights in the Script, to Plaintiff Hollywood Innovations Group, LLC ["Hollywood Innovations"], a California limited liability company headquartered in Los Angeles. Thereafter, Hollywood Innovations began production on an English language film based on the Script, titled *Alone*.

While the South Korean Producers were making *#Saraitda*, and Hollywood Innovations was making *Alone*, the South Korean Producers contacted *Alone*'s director and producers to ask about *Alone*'s production timeline. Hollywood Innovations alleged that those contacts were part of the South Korean Producers' plan to subtitle and dub *#Saraitda* into English and other languages – an alleged violation of its limited license – and use those translated versions to beat *Alone* to the global streaming market.

After the South Korean Producers completed *#Saraitda*, they licensed it to Lotte Entertainment for global distribution. Thereafter, Lotte Entertainment licensed *#Saraitda* to Netflix. Hollywood Innovations alleged that the South Korean Producers and Netflix, acting together, created both dubbed and subtitled versions of *#Saraitda*, including an English language version of *#Saraitda* that was retitled *#Alive*. Hollywood Innovations alleged that *#Alive* infringed its right to, *inter alia*, make an English

language film based on the Script.

On September 8, 2020, Netflix released *#Alive* on its streaming platform. *#Alive* became one of the most popular titles in Netflix's history.

In October, 2020, *Alone* premiered. However, *#Alive*, with its essentially identical plot, had already been streaming for English language audiences, and had destroyed the market for *Alone*.

On December 6, 2021, Hollywood Innovations filed this case, alleging a single claim for copyright infringement under the Copyright Act, 17 U.S.C. § 501, *et seq*. ["Copyright Act"], against the South Korean Producers, Netflix, and Kakao Entertainment Corporation ["Kakao"]. On March 2, 2022, Kakao was voluntarily dismissed.

The South Korean Producers, now, move to dismiss for lack of personal jurisdiction. Netflix, also, moves to dismiss for failure to join an indispensable party, for *forum non conviens*, and for failure to state a claim.

**The South Korean Producers' Motion to Dismiss for Lack of Personal Jurisdiction**

To withstand the South Korean Producers' motion to dismiss for lack of personal jurisdiction, Hollywood Innovations must establish a *prima facie* case that the Court has personal jurisdiction over the South Korean Producers. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). The Court is limited to considering the complaint and the declarations filed in connection with the motion to dismiss. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2001). Further, the Court must accept the complaint's uncontroverted factual allegations as true, may draw reasonable inferences in favor of Hollywood Innovations, and must resolve any factual conflicts in favor of Hollywood Innovations. *See Harris Rutsky*, 328 F.3d at 1129.

The Court's exercise of personal jurisdiction over foreign defendants is often analyzed under Fed. R. Civ. P. 4(k)(2), which applies when, *inter alia*, defendants are not subject to the personal jurisdiction of any state court of general jurisdiction. *See*

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). In its opposition, however, Hollywood Innovations argued that the South Korean Producers are subject to personal jurisdiction in California, thereby invoking Fed. R. Civ. P. 4(k)(1)(A). *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under Rule 4(k)(1)(A), the reach of the Court's personal jurisdiction is determined by California's long-arm statute, which is coextensive with federal due process. *Schwarzenegger*, 374 F.3d at 800-01.

Personal jurisdiction may be general or specific. *Schwarzenegger*, 374 F.3d at 802. General jurisdiction over a corporate defendant exists when a defendant's affiliations with a state are so continuous and systematic as to render it essentially at home there. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The paradigm forums where general jurisdiction exists are the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. Here, it is undisputed that both Perspective and Zip are incorporated in South Korea, and that Zip's principal place of business is South Korea. While Hollywood Innovations alleged that Perspective has offices in California, it did not allege Perspective's principal place of business. Nor did Hollywood Innovations provide any argument or evidence that California is Perspective's principal place of business. Moreover, Hollywood Innovations did not provide any evidence or argument that either of the South Korean Producers are essentially at home in California. Thus, Hollywood Innovations failed to establish a *prima facie* case that the Court has general jurisdiction over the South Korean Producers.

Specific jurisdiction exists when a defendant has sufficient minimum contacts with the forum state that are related to the lawsuit. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Court must determine whether: (1) The defendant purposefully directed its activities at the forum state, or purposefully availed itself of the privilege of doing business in the forum state; (2) The case arose out of, or relates to, the defendant's forum-related activities; and (3) The exercise of personal jurisdiction

would be reasonable. *Schwarzenegger*, 374 F.3d at 802. Here, Hollywood Innovations has the initial burden to satisfy the first two prongs; then, the burden shifts to the South Korean Producers to establish a compelling case, under the third prong, that the exercise of personal jurisdiction, here, would not be reasonable. *See Schwarzenegger*, 374 F.3d at 802.

When considering the first prong, courts use purposeful availment in contract cases and purposeful direction in tort cases. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Because copyright infringement claims sound in tort, the Court, here, must consider whether there was purposeful direction. *See Axiom*, 874 F.3d at 1069. Where a defendant's allegedly tortious conduct occurs outside of the forum state, but has effects inside the forum state, courts use the effects test to determine whether purposeful direction occurred. *AMA Multimedia, L.L.C. v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). Under the effects test, the Court must consider whether: (1) The South Korean Producers committed intentional acts; (2) Expressly aimed at California; (3) That caused harm in California that the South Korean Producers knew was likely to be suffered in California. *See Axiom*, 874 F.3d at 1069.

Hollywood Innovations alleged that the South Korean Producers produced *#Saraitda*, licensed it to Lotte and Netflix, and, then, worked with Netflix to create and exploit *#Alive*, including by reaching out to Los Angeles for information about *Alone*'s production schedule. While the South Korean Producers disputed that they were involved in dubbing or subtitling *#Saraitda* into English, by way of declarations from their chief executive officers, they did not dispute that they produced *#Saraitda*, licensed it to Lotte, and had agents who contacted *Alone*'s production staff. Those undisputed facts establish that the South Korean Producers committed intentional acts. *See AMA*, 970 F.3d at 1209.

The next issue is whether the South Korean Producers aimed those intentional acts at California. Hollywood Innovations argued, *inter alia*, that when the South

Korean Producers released *#Saraitda* into the stream of commerce – by licensing it to Lotte – the South Korean Producers knew that *#Saraitda* would be released in California. However, specific jurisdiction requires conduct *targeting* the forum – for example, a showing that the content of the allegedly infringing work had some relationship to California, that the South Korean Producers had an incentive to target California specifically, or that the content ultimately reached more viewers in California than anywhere else. *See AMA*, 970 F.3d at 1210-11.

Further, Perspective's various other contacts with California do not establish express aiming. It is not disputed that Perspective's agents, Saerom Kim, its chief executive officer, and Esther Young, emailed and called California about *Alone*'s production plans, and that Kim introduced Young as "[her] colleague … who is based in L.A."; that Perspective maintained an English language website where it described itself as "a film and television production company based in Los Angeles and Seoul"; that Kim and Young maintained profiles on the LinkedIn social network claiming that they were based in Los Angeles; and that Kim and Young used email addresses with the domain name perspective-us.com. However, Hollywood Innovations's claim, here, is for copyright infringement based on the unlicensed use of the Script. *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Perspective's seemingly innocuous emails and phone call, and its apparent connections to Los Angeles, are not clearly connected to that alleged infringement. *See AMA*, 970 F.3d at 1212. Specific jurisdiction is appropriate only where a defendant's "*suit-related* conduct … create[s] a *substantial* connection with the forum State." *Williams*, 851 F.3d at 1022 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphases added).

Lastly, Hollywood Innovations argued that the fact that Perspective was registered to do business in California showed that Perspective targeted California. If that were true, it would, certainly, counsel strongly in favor of specific jurisdiction, but that assertion is misleading. Hollywood Innovations's own evidence shows that the Perspective entity that is registered in California is Perspective Pictures, LLC, not

Perspective Co., Ltd., the defendant in this suit. While Hollywood Innovations's conclusion that both companies are alter egos of Kim may be true, the Court cannot give it any weight, here, because it is not supported by any evidence. *See Williams*, 851 F.3d at 1025, n.5.

Perhaps the better question is whether Netflix or Lotte, rather than the South Korean Producers, targeted California, and whether that targeting can be attributed to the South Korean Producers. The South Korean Producers provided the Court with a certified English translation of their distribution agreement with Lotte, and Netflix provided the Court with an amendment to Lotte's licensing agreement with Netflix. Because Hollywood Innovations alleged the existence of those documents, and did not contest their authenticity, the Court will consider them, here. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Neither document shows that Netflix or Lotte intended to target the California market when they obtained rights to *#Saraitda*. *See Axiom*, 874 F.3d at 1070. However, the amendment to the agreement between Netflix and Lotte is not the complete agreement, and some of it, including a section that apparently relates to marketing, was not translated into English.

Even if those documents showed Netflix's or Lotte's intent to exploit the California market, however, it is not clear that their jurisdictional contacts could be imputed to the South Korean Producers. The Ninth Circuit has not specifically answered the question of whether contacts can be imputed from an agent to a principal for purposes of establishing specific jurisdiction. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017). However, the Ninth Circuit did explain that for an agent's contacts to be imputed to its principal, the plaintiff must, at a minimum, plead sufficient facts to show that the principal had the right to substantially control the agent. *Williams*, 851 F.3d at 1024-25. Here, Hollywood Innovations did not plead that the South Korean Producers and Netflix or Lotte had a principal-agent relationship, or that the South Korean Producers had the right to substantially control Netflix or Lotte.

Further, Hollywood Innovations cited to cases from other circuits for the

proposition that, in some circumstances, an entity's jurisdictional contacts can be imputed to another if both entities are engaged in a joint venture. A joint venture is a business relationship in which the parties share profits and losses and agree to joint control of the business. *Apr. Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 819 (1983). However, there were no allegations or evidence that such a relationship existed among Netflix, Lotte, and the South Korean Producers, or any combination of the three.

Thus, Hollywood Innovations failed to establish that the South Korean Producers purposely directed their suit-related conduct at California. *See Axiom*, 874 F.3d at 1069. Consequently, it failed to make a *prima facie* case that the Court has specific personal jurisdiction over the South Korean Producers. *See Schwarzenegger*, 374 F.3d at 802.

However, because the personal jurisdiction determination, here, is dependant on significant questions of fact, the Court will grant Hollywood Innovations's request for jurisdictional discovery, limited to the issue of whether the Court has personal jurisdiction over the South Korean Producers. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

**Netflix's Motion to Dismiss for Failure to Join an Indispensable Party**

Netflix argued that this case must be dismissed because the South Korean Producers, Lotte, and Kakao are all indispensable parties, as their various rights relating to *#Saraitda* would be impaired if Hollywood Innovations's infringement claim succeeds. Here, the Court must consider only whether Lotte is an indispensable party, because the South Korean Producers, presently, are defendants in this case, and Kakao stipulated to its own dismissal, thereby choosing not to claim an interest in this case. *See Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002).

In deciding whether to grant a motion under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party, the Court must, first, determine whether the absent party is necessary to the suit because, *inter alia*, a decision in the case would impair or

impede that party's ability to protect an interest related to the subject of the case. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).

"When two or more persons have joined in or contributed to a single infringement of a single copyright, each is jointly and severally liable[.]" *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263 (9th Cir. 2021). "[I]t is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Indeed, because "a suit for infringement is analogous to other tort actions and infringers are jointly and severally liable … [a] plaintiff need sue only such participants as it sees fit." *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981). That includes "any member of the distribution chain." *Costello*, 670 F.2d at 1043.

Netflix relied on, *inter alia*, two copyright cases – *Vance v. Am. Soc'y of Composers*, 271 F.2d 204 (8th Cir. 1959) and *Wales Indus. Inc. v. Hasbro Bradley Inc.*, 612 F. Supp. 510 (S.D.N.Y. 1985) – to support its argument that Lotte is indispensable. However, those cases held that licensors of a copyrighted work are indispensable parties when they are the purported owner of a copyright whose validity is in question. *See Lockheed Martin Corp. v. Network Sols., Inc.*, No. CV 96-7438 DDP (ANx), 1997 WL 381967, at *3, n.5 (C.D. Cal. Mar. 19, 1997). Here, Lotte is not the purported owner of a copyright whose validity is being challenged, but, rather, the holder of a license to distribute an allegedly infringing work. "[T]he fortuity of a contract between alleged joint tortfeasors should not, and does not, permit one tortfeasor to require the plaintiff to join other tortfeasors." *Lockheed*, 1997 WL 381967, at *3. Consequently, Lotte is not a necessary party, here, and, thus, is not indispensable. *See Schnabel v. Lui*, 302 F.3d 1023, 1031 (9th Cir. 2002).

**Netflix's Motion to Dismiss for *Forum Non Conveniens***

The Court has discretion to dismiss a case when a foreign country has jurisdiction over the case and the parties, and a trial in the United States would be disproportionately vexatious or oppressive to the defendant, or because the United

States is not an appropriate forum due to the Court's own administrative and legal concerns. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). However, "[w]hen a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011). Netflix did not dispute that Hollywood Innovations is a domestic company. Accordingly, here, Netflix has the burden of defeating the presumption that the litigation of this case in the United States is convenient. *Carijano*, 643 F.3d at 1227.

First, the Court must determine which country's laws apply to this case. *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990). The sole claim, here, is for copyright infringement under the Copyright Act. The success of that claim depends on whether Hollywood Innovations, itself, holds the right to dub and subtitle *#Saraitda* in English, or whether Naylor sold that right to the South Korean Producers. *See Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987). Thus, the Court must consider the Naylor-Zip Agreement, which is the source of the South Korean Producers' license. That agreement contains a choice of law provision: "This Agreement shall be governed by and construed in accordance with the laws of South Korea[.]"

However, because Hollywood Innovations alleged a copyright infringement claim, not a breach of contract claim, the ultimate question is whether the acts of the South Korean Producers and/or Netflix constituted copyright infringement under the Copyright Act. *See Effects Assocs.*, 817 F.2d at 74. South Korea and the United States are signatories to the Berne Convention for the Protection of Literary and Artistic Works ["Berne Convention"]. Pursuant to the Berne Convention, because Hollywood Innovations seeks redress for a violation of the Copyright Act in an American court, American law must be applied, here. *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995).

Consequently, the Court must apply Korean law to construe the contract, and

then apply American law to determine if the Copyright Act was violated. *See Effects Assocs.*, 817 F.2d at 73-74.

Next, because Hollywood Innovations did not dispute that South Korea would be an adequate forum for this case, the Court must consider whether Netflix has established that the balance of private and public factors clearly points toward a trial in South Korea. *See Carijano*, 643 F.3d at 1227.

With regard to public factors, the Court must consider, *inter alia*, the local interest in the lawsuit and the burden on the local judiciary, including the Court's familiarity with the applicable law. *Carijano*, 643 F.3d at 1227. The local interest, here, weighs in favor of Hollywood Innovations's choice of forum, in that it is an American company seeking to have its American copyright enforced under American law. *Creative Tech.*, 61 F.3d at 704. Regarding the burden on this Court, Netflix cited to only one provision of South Korean law, Article 99 of the South Korean Copyright Act, to explain how the Naylor-Zip Agreement should be construed under South Korean law. It is unlikely that a single South Korean statute could resolve this case, especially because Netflix provided no South Korean case law that explains the proper application of that statute. However, if, indeed, the Naylor-Zip Agreement can be interpreted solely by a single South Korean statute, then the Court's lack of familiarity with South Korean law would not be an unreasonable obstacle to the resolution of this case. Thus, the public factors weigh in favor of Hollywood Innovations's choice of forum.

With regard to the private factors, the Court must consider the residence of the parties and witnesses, the forum's convenience to the parties, the parties' access to evidence, whether the Court can compel unwilling witnesses to testify, the enforceability of a judgment, and any other practical issues. *Carijano*, 643 F.3d at 1229. Hollywood Innovations and Netflix are both located in the United States. While the South Korean Producers are based in South Korea, Hollywood Innovations submitted uncontroverted evidence that Perspective has agents who operate in the

United States and that it advertises that it has an office in Los Angeles. Netflix failed to show that a judgment from this Court would be unenforceable against the South Korean Producers, and it did not go beyond vagaries with regard to the location of witnesses and evidence. *See Contact Lumber*, 918 F.2d at 1449. Finally, Netflix argued that the Court cannot compel the production of required evidence, or the appearance of witnesses, from South Korea. However, Hollywood Innovations is the only party without an apparent presence in South Korea, but it argued that Fed. R. Civ. P. 28 and the Hague Convention on the Taking of Evidence Abroad will provide it with sufficient access to the South Korean evidence that it will need. Thus, the private factors, also, weigh in favor of Hollywood Innovations.

After balancing the public and private factors, the Court concludes that Netflix failed to satisfy its heavy burden of showing that this case would be inconvenient to try in this Court. *See Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210 (2017).

**Netflix's Motion to Dismiss for Failure to State a Claim**

Netflix's motion to dismiss for failure to state a claim is based on Article 99 of the South Korean Copyright Act. According to the translated copy of Article 99 that Netflix filed as an exhibit to the declaration of its legal director for South Korea, the statute provides that:

> If the holder of author's economic right authorizes another person to exploit his/her work by means of cinematization, such authorization shall be presumed to include … [the right] [t]o exploit the translation of a cinematographic work in the same manner as the cinematographic work.

As explained above, the translation of one South Korean statute is not enough for the Court to determine what rights were conveyed and retained by the Naylor-Zip Agreement, which, in turn, could determine the success of Hollywood Innovations's copyright infringement claim. *See Effects Assocs.*, 817 F.2d at 73-74. Fed. R. Civ. P. 44.1 authorizes the Court to apply foreign law on a motion to dismiss for failure to state a claim. *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016). However,

the legal context offered by Netflix, here, is severely limited.  Netflix failed to employ, for example, the Ninth Circuit's endorsed practice of using declarations from experts on foreign law to explain how foreign law should be applied.  *See de Fontbrune*, 838 F.3d at 1000.  The declaration that Netflix provided from its legal director in South Korea, including the declaration's three sentence description of Article 99, is not sufficient for that purpose.  Consequently, Netflix's failure to provide more context about the operation of South Korean law, in particular with regard to the interpretation of the Naylor-Zip Agreement and the application of Article 99, prevents it from meeting its burden of establishing that Hollywood Innovations failed to state a claim.  *See Shay v. Apple Inc.*, 512 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021).

Accordingly,

It is Ordered that Netflix's motion to dismiss be, and hereby is, Denied.

It is further Ordered that the parties may conduct jurisdictional discovery, limited to the issue of whether the Court has personal jurisdiction over the South Korean Producers, through November 21, 2022.

It is further Ordered that Hollywood Innovations may file a supplemental opposition, if any, to the Korean Producers' motion to dismiss for lack of personal jurisdiction by December 5, 2022; and the Korean Producers may file a supplemental reply, if any, by December 19, 2022.  The matter will then stand submitted.

Date: August 12, 2022

Terry J. Hatter, Jr.
Senior United States District Judge